IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JESUS CASIANO,

    Plaintiff,                                           Civil Action No.  2:18-cv-01547

v.

CHARLESTON AREA
MEDICAL CENTER, INC.,

    Defendant.

## COMPLAINT

Plaintiff Jesus Casiano, by his counsel, Hoyt Glazer, Esq. and the Law Office of Hoyt Glazer, PLLC, files this legal action against Defendant Charleston Area Medical Center, Inc. seeking redress and remedy arising from the Defendant's deliberate failure to comply with the provisions of the Title VII of the Civil Rights Act, the Family and Medical Leave Act of 1993, and the public policy and common law of the state of West Virginia prohibiting illegal discrimination and retaliation against persons based on their national origin and race. Plaintiff requests a jury trial and relief sufficient to remedy the unlawful and outrageous employment practices of the Defendant.

### PARTIES

1. Plaintiff Jesus Casiano is and was, at all times alleged herein, a citizen and resident of Kanawha County, West Virginia.

2. Defendant Charleston Area Medical Center, Inc. ("CAMC") is and was, at all times alleged, a domestic corporation doing business in the State of West Virginia, with its principal office located in Charleston, West Virginia.

3. Defendant operates health care facilities in Kanawha and Putnam Counties.

4. At all times alleged, Defendant acted by and through its agents, employees, supervisors, directors, members, officers and assigns and within the full scope of agency, office, employment and/or assignment.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this civil action under Article III, §2 of the United States Constitution and 28 U.S.C. §1331.

6. Venue is appropriate in this case under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this claim occurred in Kanawha County, which is in the Southern District of West Virginia.

## FACTS

7. Plaintiff Jesus Casiano is a Latino male of Puerto Rican heritage.

8. On or about February 15, 2016, Mr. Casiano began his work with Defendant CAMC as a "Maintenance Tech II" employee earning $13.75 an hour.

9. Mr. Casiano's duties included basic plumbing, installing sheet rock, and performing repair work on CAMC's premises.

10. About three months after he began his employment, Mr. Casiano experienced discrimination and unfavorable treatment from Defendant and its employees during his work.

11. Several employees referred to Mr. Casiano by derogatory names and epithets, including but not limited to, calling him a "Mexican Wetback," "Spic," "Spanish N**ger," "Taco Bell," and "Jose Cuervo."

12. On or about May 2016, Mr. Casiano made a verbal report about the derogatory remarks to his supervisor, the head of Defendant's maintenance department.

13. Following his report, the Defendant transferred Mr. Casiano from evening shift to day shift.

14. After his transfer, employees with whom Mr. Casiano worked refused to sit with him at lunch and made derogatory remarks about his genitalia and his height.

15. The employees also referred to Mr. Casiano as "Jose Cuervo" and used ethnic slurs against him.

16. On or about August 2016, the Defendant's maintenance department held a meeting at which Defendant instructed employees not to use racial slurs.

17. Following the August 2016 meeting, Mr. Casiano continued to suffer discriminatory insults and treatment from his co-workers.

18. Mr. Casiano reported his discriminatory treatment to Defendant's head of maintenance several times after August 2016.

19. Despite Mr. Casiano having made several reports about his discriminatory treatment to Defendant, the Defendant took no action to prevent or otherwise ensure that Mr. Casiano did not experience discrimination in the workplace.

20. On or about November 1, 2016, a co-employee, who is Caucasian, pulled a knife on Mr. Casiano and told him that he was "going to f*ck [Mr. Casiano] up."

21. One of Defendant's supervisors observed the employee pull a knife on Mr. Casiano.

22. The Defendant's supervisor told Mr. Casiano to report to human resources and explain what happened.

23. Approximately one week after having a knife pulled on him, Mr. Casiano was transferred to Defendant's Women and Children's Hospital.

24. On information and belief, the employee who pulled the knife on Mr. Casiano did not receive any discipline for this incident.

25. From approximately November 23, 2016 until February 23, 2018, Mr. Casiano worked for Defendant at Women and Children's Hospital.

26. Throughout his employment, Mr. Casiano's wife required regular medical treatments for a serious health condition.

27. Defendant knew Mr. Casiano's wife required continuing medical treatment for her serious health condition, and that Mr. Casiano required leave to care for his wife.

28. This is because on several occasions Mr. Casiano verbally notified Defendant of his wife's serious health condition.

29. While working at Women and Children's Hospital, a co-worker told Mr. Casiano that the Defendant had conducted a meeting before his arrival and had told the employees present that they had a "trouble-maker" and a "whistleblower" coming to work, and that the Defendant planned to get rid of Mr. Casiano.

30. During his work at said facility, Mr. Casiano's co-workers referred to him by derogatory racial and ethnic slurs.

31. After Hurricane Maria struck Puerto Rico, Mr. Casiano's co-workers told him that Puerto Ricans did not matter and made derogatory remarks about people of Puerto Rican heritage.

32. When Mr. Casiano told his manager at Women and Children's Hospital about the treatment he had suffered, his manager told him he had to develop a "tougher skin."

33. On or about November 2017, Mr. Casiano filed charges of discrimination with the EEOC.

34. On or about February 23, 2018, Defendant terminated Mr. Casiano alleging he was "hot headed."

35. Defendant terminated Mr. Casiano while his EEOC charge was pending.

36. Since his termination, Mr. Casiano has had difficulty obtaining suitable gainful employment and was ultimately required to accept a position where he earns significantly less money than he did prior to his termination.

37. On October 9, 2018, the EEOC issued Mr. Casiano a "right to sue" letter (Exhibit A).

## COUNT I: DISCRIMINATION BASED ON RACE/ETHNICITY

38. Plaintiff incorporates the previous paragraphs as if set forth herein.

39. Throughout his employment, the Plaintiff satisfied all requisite job qualifications, was qualified for the position that he held, and performed his job in a manner that met or exceeded the Defendant's legitimate expectations.

40. The Defendant treated employees who are not Latino more favorably than Plaintiff because they are not Latino.

41. On information and belief, employees who are not Latino were not subjected to derogatory treatment and actions including, but not limited to, repeated racial/ethnic slurs.

42. The Plaintiff's ethnicity was a motivating factor in the Defendant's decision to take adverse action against the Plaintiff, including transferring him, and its termination of him.

43. But for the Plaintiff's protected status as Latino, the Defendant would not have taken adverse employment actions against him, up to and including his termination.

44. The Defendant discriminated against Mr. Casiano on the basis of race/ethnicity in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

45. Defendant's treatment of Plaintiff because of his race/ethnicity was done with malice and with reckless indifference to Plaintiff's rights and Plaintiff's emotional and physical well-being.

46. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer substantial damages. Wherefore, Plaintiff requests relief as provided in the prayer.

## COUNT II: DISCRIMINATION BASED ON NATIONAL ORIGIN

47. Plaintiff incorporates the previous paragraphs as if set forth herein.

48. Throughout his employment, the Plaintiff satisfied all requisite job qualifications, was qualified for the position that he held, and performed his job in a manner that met or exceeded the Defendant's legitimate expectations.

49. The Defendant treated employees whose national origin is not Puerto Rican more favorably than Plaintiff.

50. On information and belief, employees who are not Puerto Rican were not subjected to derogatory treatment and actions including, but not limited to, repeated slurs based on national origin.

51. The Plaintiff's national origin was a motivating factor in the Defendant's decision to take adverse action against the Plaintiff including, but not limited to, its failure to remedy the slurs and threats against Mr. Casiano, and its transferring and termination of him.

52. But for the Plaintiff's protected status as Puerto Rican, the Defendant would not have taken adverse employment actions against him, up to and including his termination.

53. The Defendant discriminated against Mr. Casiano on the basis of national origin in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

54. Defendant's treatment of Plaintiff because of his national origin was done with malice and with reckless indifference to Plaintiff's rights and Plaintiff's emotional and physical well-being.

55. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer substantial damages. Wherefore, Plaintiff requests relief as provided in the prayer.

### COUNT III: RETALITATORY DISCHARGE

56. Plaintiff incorporates the previous paragraphs as if set forth herein.

57. Before his termination by Defendant in February 2018, Mr. Casiano had performed all conditions, covenants, promises, duties and responsibilities required of him and in

accordance and conformity with Defendant's legitimate expectations.

58. In striving to comply with his duties as an employee and with Title VII of the Civil Rights Act, Mr. Casiano repeatedly notified Defendant that he had suffered discriminatory treatment and actions in the workplace.

59. Plaintiff notified Defendant's managers and human resources representative(s), of his concerns involving Defendant's employees' actions and treatment of him that he believed were discriminatory and/or in violation of Title VII of the Civil Rights Act.

60. Plaintiff also filed a complaint with the EEOC during his employment with the Defendant.

61. In making reports, as described above, and filing a complaint with the EEOC, Plaintiff reasonably and in good faith believed that Defendant had violated the provisions of Title VII prohibiting discrimination against an employee based on his race/ethnicity and/or national origin.

62. In reporting his treatment and filing a complaint with the EEOC, Mr. Casiano engaged in protected conduct under Title VII of the Civil Rights Act.

63. The Defendant never provided any report, verbal or written, to Mr. Casiano after he reported incidents of discrimination to Defendant.

64. Title VII prohibits an employer from engaging in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under Title VII or because he or she has filed a complaint, testified or assisted in any proceeding under Title VII. See, 42 U.S.C. § 2000e-3(a).

65. Defendant's termination of Plaintiff's employment after he had filed a complaint with the EEOC resulted from his legitimate efforts to comply with Title VII and his protected conduct in seeking to have Defendant comply with Title VII.

66. Plaintiff's discharge followed his protected activities within such a period of time that the

Court can infer retaliatory motivation.

67. The Defendant's treatment and termination of Plaintiff is a retaliatory and wrongful discharge in violation of 42 U.S.C. § 2000e-3(a).

68. Defendant's actions are and were indifferent to Plaintiff's rights under Title VII. Wherefore, Plaintiff seeks punitive damages and other relief as provided below.

## COUNT IV: HOSTILE WORK ENVIRONMENT

69. Plaintiff incorporates the previous paragraphs as if set forth herein.

70. During the course of his employment, Mr. Casiano was continually subjected to hostile and inappropriate comments and remarks by Defendant's employees based on his race and/or national origin.

71. Mr. Casiano did not consent, encourage or welcome the harassment described in the preceding paragraphs.

72. The harassment against Mr. Casiano was sufficiently severe or pervasive to alter the conditions of his employment and created an abusive and hostile work environment.

73. Plaintiff gave Defendant notice of the harassment and hostile work conditions as previously alleged.

74. Defendant had notice of the harassment because it was pervasive and obvious.

75. Defendants failed to investigate and take remedial action in response to Mr. Casiano's reports of the harassment and hostile work environment.

76. Harassment and discrimination continued to occur following Mr. Casiano's reports of harassment.

77. Defendant had the power to alter or affect the terms and conditions of Mr. Casiano's employment and denied him benefits of employment for his refusal to submit to the conduct taken against him as previously alleged.

78. Defendant's failure to remedy the improper, hostile work environment harmed Mr. Casiano.

79. Defendant acted with malice and with reckless indifference to Mr. Casiano's rights under Title VII and Plaintiff's emotional and physical condition.

80. As a proximate result of Defendant's actions, Mr. Casiano has suffered, and continues to suffer, substantial damages including, but not limited to, lost earnings and other benefits employment, emotional distress and expenses in obtaining substitute employment, all to his damage in an amount according to proof. Wherefore, Plaintiff requests relief as provided in the Prayer for Relief.

### COUNT V: OUTRAGE

81. Plaintiff incorporates the preceding paragraphs as if set forth herein.

82. Defendant's above actions were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

83. Defendant acted with the intent to inflict emotional distress and/or acted recklessly when it was certain or substantially certain emotional distress would result from its conduct.

84. Defendant's actions caused Plaintiff to suffer emotional distress and fear.

85. The emotional distress suffered by Plaintiff was and is so severe that no reasonable person could be expected to endure it.

86. As a direct and proximate result of Defendant's actions, as described above, Mr. Casiano has suffered and continues to suffer damages for which he seeks relief as requested below.

### COUNT VI: INTERFERENCE WITH RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT OF 1993

87. Plaintiff incorporates the previous paragraphs as if set forth herein.

88. Defendant is and was a covered employer under the FMLA and employed 50 or more people within 75 miles of the location where Plaintiff worked.

89. At all times alleged Plaintiff's wife had/has a serious health condition(s), as defined in 29 C.F.R. §825.113.

90. In March 2017, Mr. Casiano completed one year of service with the Defendant, which made him eligible for leave under The Family and Medical Leave Act of 1993.

91. When supplying sufficient notice about his wife's serious health condition, Mr. Casiano had been employed by Defendant for longer than twelve (12) months and had worked at least 1250 hours of service for Defendant during the past twelve months.

92. The FMLA requires that "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer **must notify** the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. §825.300(b)(1) (emphasis added).

93. Under 29 C.F.R. §825.300(b)(1), the notice "must state whether the employee is eligible for FMLA leave." If the employee is not eligible, the notice "must state at least one reason why the employee is not eligible." Id. §825.300(b)(2).

94. The employer must also provide individual written notice of the employee's rights and responsibilities under the FMLA each time eligibility notice is required/provided. 29 C.F.R. §825.300(c).

95. Defendant did not, at any time, provide FMLA's statutorily required individual notice(s) to Plaintiff of his eligibility or rights and responsibilities involving treatment and care of his wife's serious health condition.

96. Defendant's failure to provide notice resulted in prejudice to Plaintiff and impairment of his legal rights because he needed time off work to care for his wife and her serious health condition, and he did not take it because he did not know that the FMLA provided him with the ability to take protected medical leave without risking loss of employment or other adverse employment action.

97. When Plaintiff notified Defendant of his wife's serious health conditions and/or his need to take time off from work to care for his wife, he gave adequate and proper notice of his need to take leave under the FMLA.

98. Defendant knew Plaintiff required FMLA notice and failed to provide him with the required, individual notice of his rights and eligibility to take FMLA leave to care for his wife's serious health conditions.

99. Defendant knowingly and deliberately interfered with and/or denied Plaintiff's FMLA rights.

100. Defendant's treatment of Plaintiff when it knew he was in need of leave and/or at a time when he notified Defendant that he needed time to care for his wife was reckless and in deliberate disregard of the FMLA's notice provisions and Plaintiff's rights under the FMLA.

101. In failing to notify Plaintiff of his FMLA rights and eligibility when Defendant knew he was eligible for and in need of FMLA leave, Defendant interfered with and violated Plaintiff's rights under the FMLA, causing prejudice and damage to Plaintiff because Plaintiff could not make informed decisions about taking protected leave. Wherefore, Plaintiff seeks all appropriate relief as requested in his prayer for relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks damages as set forth below:

On Counts I, II, III, IV and V, grant Plaintiff actual damages for lost wages, front pay and back pay, lost compensation, fringe benefits and out of pocket costs and expenses in an amount to be determined by a jury;

On Counts I, II, III, IV and V, grant Plaintiff general and compensatory damages for annoyance, inconvenience, embarrassment, humiliation and emotional distress suffered by Mr. Casiano as a direct and proximate result of Defendant's conduct;

On Counts I, II, III, IV and V, grant Plaintiff punitive damages in an amount to be determined by a jury and sufficient to deter future improper conduct and to punish the Defendant for its reckless and willful actions;

On Count VI, grant Plaintiff back wages, liquidated damages, reinstatement and/or front pay, the costs of litigation, including court costs, any expert witness fees, reasonable attorneys' fees, and all other remedies allowed under the FMLA;

Prejudgment and post-judgment interest on all amounts allowed by law;

All costs incurred in pursuing this action;

Attorney fees; and

Such other relief as this Court deems fair and proper in the interest of justice.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES.**

                                                PLAINTIFF, JESUS CASIANO,
                                                By Counsel,

s/Hoyt Glazer
Hoyt Glazer, Esq. (WV Bar #6479)
Law Office of Hoyt Glazer, PLLC
618 10th Street, Suite 105
Huntington, WV 25701
T. 681-204-3914
F. 681-245-6283
hoyt@hoytglaw.com